## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| RASHID KAMBAROV, | Civil Action No.: 3:24-cv-00007 |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| GLOBAL SAFETY NETWORK, | |
| Defendant. | |

## COMPLAINT

Rashid Kambarov ("Plaintiff" or "Mr. Kambarov") by and through his counsel brings the following Complaint against Global Safety Network ("Defendant" or "Global") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted first-degree rapist and felon.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database

1

and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was a convicted first-degree rapist.  Defendant's reporting is grossly inaccurate and untrue.

4.      Plaintiff was convicted of an offense in 2015 by a non-unanimous jury, but Plaintiff's conviction was vacated and overturned in January of 2023.

5.      Not only was Defendant's reporting in October 2023 inaccurate, but it was also materially misleading and incomplete in that it completely failed to mention the fact that the criminal record at issue was overturned and vacated in January 2023.

6.      Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate felony conviction.

7.      Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Umatilla County, Oregon, regarding the felony record prior to publishing Plaintiff's report to his prospective employer.

8.      Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the conviction had been vacated and overturned in January 2023.

9.      Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

10.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11.     Defendant did not send Plaintiff a pre-adverse action report *prior* to sending the inaccurate report to his potential employer to allow Plaintiff an opportunity to correct the report before Plaintiff was prejudiced.

12.     Defendant's inaccurate report cost Plaintiff a good paying job and job security.

13.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum

possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – the **felony** conviction – was inaccurate and should be corrected in the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

15.    Rashid Kambarov ("Plaintiff" or "Mr. Kambarov") is a natural person residing in Portland, Oregon, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.    Global Safety Network ("Defendant" or "Global") is a North Dakota corporation doing business throughout the United States, including the State of Oregon and in this District, and is headquartered in Grand Forks, North Dakota.

17.    Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

18.    Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

23.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

25.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

26.    The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

27.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

31.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

32.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

33.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.

34.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

35.     Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019),
https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf
("CFPB Report").

36.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

37.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

38.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant reported the felony with a disposition of "guilty" despite the fact that the criminal record had been overturned and vacated.

41.     As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Express Employment Pros

42.     In or around October of 2023, Plaintiff applied for full-time employment with Express Employment Pros ("Express").

43.     Upon applying to Express, Plaintiff successfully completed an interview and a drug test.

44.     In or around October of 2023, Express extended a job offer to Plaintiff for the position to which he applied.  The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

### Defendant Published an Inaccurate Background Check Report to Express

45.     Express contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

46.     On October 12, 2023, Express ordered a criminal background check on Plaintiff from Defendant.

47.     On November 1, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Express Employment.

48.     Within that employment report, Defendant published inaccurate information about Plaintiff.

49.     Specifically, Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing felony conviction from Umatilla County, Oregon, which appeared in the employment report as follows:



50.    The disposition of the felony conviction reported by Defendant about Plaintiff is inaccurate.

51.    In 2015, Plaintiff was convicted of the charge by a non-unanimous jury.

52.    Subsequently, Plaintiff pursued an appeal, underwent a post-conviction process, and ultimately succeeded in having his conviction overturned due to its unconstitutionality.

53.    In April 2020, the U.S. Supreme Court ruled that The Sixth Amendment right to a jury trial, as incorporated against the States by way of the Fourteenth Amendment, required a unanimous verdict to convict a defendant of a serious offense. *Ramos v. Louisiana*, 140 S. Ct. 1390. At that time, only two states still allowed nonunanimous convictions; Louisiana and Oregon.

54.    As the Supreme Court explained in *Ramos*, those laws were intended to undermine non-white populations, especially in voting.

55.    In December 2022, Oregon's Supreme Court finally ruled that nonunanimous jury verdicts were unconstitutional. See *Watkins v. Ackley*, 370 Ore. 604.

56.     As a result, the Oregon Supreme Court overturned the convictions of 470 people who had serious convictions on appeal, including Plaintiff. The vacated convictions were covered in many local and national news stories.[2]

57.     The felony conviction was vacated and overturned in January of 2023.

58.     By that point, Plaintiff had spent almost 8 years wrongfully incarcerated and had only two months left on his sentence.

59.     A cursory review of the widely available underlying public court records confirms that Plaintiff's felony conviction was vacated and overturned on January 31, 2023.

60.     The sole reason the inaccurate felony conviction was reported with a disposition of guilty by Defendant was because Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

61.     Had Defendant followed reasonable procedures, it would have discovered that the conviction was vacated and overturned in January of 2023.

62.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

---

[2] Hundreds of Oregon criminal convictions overturned due to nonunanimous jury verdicts, Supreme Court decides, https://www.oregonlive.com/crime/2022/12/hundreds-of-criminal-verdicts-now-invalid-after-oregon-supreme-court-rules-unanimous-jury-requirement-applies-to-old-cases.html; Oregon takes reins in justice reform over non-unanimous criminal verdicts, https://www.reuters.com/legal/government/oregon-takes-reins-justice-reform-over-non-unanimous-criminal-verdicts-2023-01-06/.

**Express Denies Plaintiff's Job Application**

63.    On November 1, 2023, Plaintiff was notified by Express, via telephone, that his employment application was denied as a direct result of the felony conviction reported by Defendant.

64.    Defendant did not send a pre-adverse action letter and report to Plaintiff, *before* sending a copy of the inaccurate report to Express, to allow Plaintiff to challenge and correct the report, as required of Defendant under the FCRA § 1681k(a)(1).

65.    On November 3, 2023, Plaintiff received a written denial letter from Express.

66.    Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the felony conviction contained within the subject employment report.

67.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he was still guilty of the felony despite the fact that it was overturned and vacated, both in relation to the Express position, but also the impact of the same on his future.

68.    Specifically, Defendant reported that Plaintiff was *guilty* of the felony despite the fact that the underlying court records establish it was vacated and overturned in January 2023. The underlying court records were available to Defendant prior to publishing Plaintiff's employment report to Express, but Defendant failed to obtain or perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

69.    On November 5, 2023, desperate to secure employment with Express and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant.  Plaintiff disputed via email with Defendant.

70.    Plaintiff identified himself and provided information to Defendant to support his dispute.

71.    Specifically, Plaintiff emailed Defendant a copy of the January 31, 2023 judgment proving the overturning and vacatur of the felony conviction.

72.    Plaintiff specifically disputed the inaccurate reporting of the felony conviction with a disposition of *guilty*.

73.    Plaintiff specifically asked Defendant to investigate and correct its reporting in any employment report about Plaintiff.

### Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report

74.    On November 6, 2023, a representative from Defendant emailed Plaintiff asking for documentation about the vacatur, and Plaintiff quickly responded with a copy of the January 31, 2023 judgment vacating Plaintiff's conviction.

75.    Defendant's representative then called Plaintiff and told him that she would work on correcting the report since the "guilty conviction" Defendant was reporting was inaccurate.

76.    However, as of the date of the filing of this Complaint, Plaintiff has not received an updated report or a dispute response from Defendant.

77.    Upon information and belief Defendant failed to issue a corrected employment report to Express.

78.    Given the arrest was in 2015 and the result is no longer a conviction, the record of arrest antedates any consumer report published after 2022 by seven years and therefore cannot be published to a third party pursuant to the FCRA § 1681c(2).

79.    However, Defendant did not issue a corrected report to Express which did not include any mention of the vacated offense.

80.    Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's November 5, 2023, dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

81.    Because Defendant failed to issue a corrected employment report, Express did not reinstate its job offer to Plaintiff.

82.    But for Defendant's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

83.    Defendant's false report cost Plaintiff a promising, well-paying job with Express.

84.    Plaintiff was excited to work with Express because he was qualified to successfully perform the work and was passionate about the field.

85.    Moreover, Plaintiff was looking forward to moving on with his life and beginning a career.

86.    Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, Plaintiff was denied a promising job opportunity with Express.

87.    The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

88.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

89.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

90.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

91.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

92.     At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

93.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

94.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

95.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §

1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

96.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

97.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

98.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

99.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

100.    On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to him, namely, stating that he is ***guilty*** of the felony.

101.   In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

102.   Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

103.   As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

104.   Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §

1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

105.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681k(a)(1)
## Failure to Provide "At the time" Notice

106.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

107.   The FCRA imposes specific requirements on consumer reporting agencies, like Defendant, that sell and distribute a consumer report for employment purposes that include public records.

108.   Specifically, 15 U.S.C. § 1681k(a) requires that a consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.  For

purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

109.    Upon information and belief, Defendant violated 15 U.S.C. § 1681k(a) because it failed to notify Plaintiff of the adverse public records information it had provided to Express at the time it provided her consumer report to Express, and it failed to maintain **strict** procedures to ensure the adverse information it reported about Plaintiff was complete and up to date.

110.    Defendant's consumer report about Plaintiff was furnished for an employment purpose and contained one or more public records of the type that may (and did) adversely affect an employer's hiring decision.

111.    Plaintiff did not learn of the adverse information in Defendant's consumer report until Express informed her of the adverse action.

112.    Plaintiff did not even know that Defendant had provided a consumer report for employment purposes (which included adverse public records information) to Express until after Express had decided to rescind the job offer previously extended to Plaintiff.

113.    Defendant's consumer report about Plaintiff provided to Express included inaccurate and false criminal records information that conflicted with the information available in the public record.

114.    Defendant failed to comply with the rigors of 15 U.S.C. § 1681k(a)(2) and therefore must necessarily rely upon its compliance with § 1681k(a)(1).

115.   Upon information and belief, Defendant did not send to Plaintiff the requisite notice pursuant to 15 U.S.C. § 1681k(a)(1).

116.   Upon information and belief, Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within thirty days before it furnishes and resells these records in one of its reports.

117.   Defendant violated 15 U.S.C. § 1681k(a)(1) by failing to provide the required FCRA notices to Plaintiff.

118.   As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, delayed start of employment, wages, and benefits; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

119.   Defendant willfully violated 15 U.S.C. § 1681k(a)(1) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

120.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

DATED this 3rd day of January 2024.

*/s/Dawn McCraw*
Dawn McCraw, OR #192645
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1750
E: dmccraw@consumerattorneys.com
*Attorneys for Plaintiff*
*Rashid Kambarov*